Mary E. Fazio, Plaintiff-Appellant,

v.

Department of Employee Trust Funds and Eric O.
Stanchfield, Defendants-Respondents.

Court of Appeals

*No. 01–2595. Submitted on briefs March 14, 2002.—Decided
April 25, 2002.*

2002 WI App 127

(Also reported in 645 N.W.2d 618.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert L. Elliott*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Joely Urdan*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Dykman and Roggensack, JJ.

¶ 1. VERGERONT, P.J. Mary Fazio appeals the order dismissing her complaint, which alleged that the retention of the death benefit due her by the Department of Employee Trust Funds (DETF) constituted unjust enrichment and a taking without just compensation contrary to Wis. Const. art. I, § 13.[1] The circuit court dismissed the complaint without prejudice upon concluding that Fazio had not exhausted the administrative remedies available to her. She contends on appeal that using the administrative process would be

---

[1] WISCONSIN CONST. art. I, § 13 provides:

> The property of no person shall be taken for public use without just compensation therefor.

futile, and she is therefore not required to exhaust it before seeking in court the interest she claims is due her. We conclude that Fazio was not required to appeal to the DETF Board before filing this action because the Board did not have the authority to decide Fazio's claims and grant the relief she seeks. We therefore reverse and remand for further proceedings.

## BACKGROUND

¶ 2. Because we are reviewing an order deciding a motion to dismiss the complaint, we begin with the allegations of the complaint. Mary Fazio is the widow of Anthony Fazio, who died on January 2, 1999. At the time of Anthony's death, he was a participant in the Wisconsin Retirement System (WRS) and had named Mary as his beneficiary. On January 2, 1999, she was entitled to a lump-sum death benefit of $506,570, but it remained in the possession of DETF until December 21, 2000, and DETF had the use of it during that time. On information and belief, DETF has retained for substantial periods of time the lump-sum death benefits due other beneficiaries after the benefits were distributable. DETF was unjustly enriched by the value of the use of those funds during the time period they were retained, and DETF's retention and use of those funds during that time period was an unconstitutional taking under the WIS. CONST. art. I, § 13. The complaint was filed as a class action, and Mary sought for herself and each member of the class the amount of unjust enrichment to DETF as a result of the retention of the benefits due each, and the amount taken from each without just compensation, plus interest.

¶ 3. DETF[2] moved to dismiss the complaint on the ground that the exclusive remedy for Fazio, and others in her situation, was an appeal to the DETF Board and then review of the Board's decision by an action for certiorari review in the circuit court.[3] Accompanying the motion was the affidavit of a DETF employee averring that on April 4, 2001, Fazio had filed an appeal with the DETF Board of the determination of DETF that Fazio was not entitled to any interest on her lump-sum benefit under WIS. STAT. § 40.73(1)(c) (1999–2000),[4] and the appeal had been set for a pre-hearing conference on July 13, 2001.[5] The DETF determination letter, attached to the affidavit, stated that the

---

[2] The complaint named both DETF and DETF Secretary Eric Stanchfield as defendants. We refer to both as DETF unless there is a need to distinguish between the two.

[3] DETF also moved to dismiss on the grounds that sovereign immunity barred the unjust enrichment claim, no taking occurred because Fazio had no right to interest on a lump-sum benefit, and failure to file a notice of claim as required by WIS. STAT. § 893.82 (1999–2000) barred the unjust enrichment claim against Stanchfield. The trial court did not rule on these grounds.

[4] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[5] Fazio's letter of appeal to the DETF Board, which was attached to the affidavit, explained that the appeal was made on behalf of Fazio and all others similarly situated and was "filed in the alternative and in the event [the court in this action] . . . is determined not to have primary jurisdiction over this matter . . . ." The letter asked that proceedings on the appeal be stayed until the court in this action determined whether the matter had to be remanded to the Board. At the hearing on the motion to dismiss in this action, held on August 17, 2001, Fazio's counsel advised the court that in the administrative proceeding the parties were briefing her request for a stay.

death benefit paid to Fazio was correctly calculated under § 40.73(1)(c), based on the present value on the day following the date of her husband's death, and there was no statutory provision for adding interest regardless of when it was paid or the form in which it was paid. The determination letter advised that Fazio could appeal to the DETF Board, and added:

> However, it is important for [you] to understand that the Board has no equity authority in such cases. This means that while they may sympathize with [your] position, they cannot take an action that is contrary to the law. In order for [you] to be successful in an appeal to the Board, [you] will need to offer a legal argument that supports [your] right to interest payments in the death benefit [you] received. Again, based on my analysis of the applicable state statutes, there is no legal basis on which the Board could include interest in the death benefit.

¶ 4. Fazio opposed the motion to dismiss, arguing that appeal to the Board would be futile, because DETF had already taken the position that it had no statutory authority to award Fazio the interest she sought, and had repeated that position in its brief supporting its motion to dismiss. According to Fazio, DETF's own regulation, Wis. Admin. Code § ETF 11.03(2)(a),[6] prohibited it from giving the plaintiff class the equitable relief

---

[6] Wisconsin Admin. Code § ETF 11.03(2)(a) provides:

(2) Limitations on board remedies. Limitations on the boards' powers include the following:

(a) The deferred compensation board, group insurance board, teachers retirement board and Wisconsin retirement board have no equity powers. The employe trust funds board has no equity powers, except as provided under s. 40.03(1)(a), Stats., to correct inequity in the computation of the amount of an annuity or death benefit resulting from a participant's combination of full-time and

it sought. DETF replied that the administrative process was not futile because the Board had the authority to adopt a different interpretation of the statutes than DETF had employed in its determination on Fazio's request for interest; and, under Wis. Admin. Code § ETF 11.12(1)(d), the Board had the authority to remand "the matter to the department with instructions to take necessary action on the matter, consistent with the final decision." Accordingly, DETF argued the Board did have the authority to decide that Fazio was entitled to interest and to order DETF to pay her interest.

¶ 5. The circuit court concluded that under the recent decision of *State ex rel. Hensley v. Endicott*, 2001 WI 105, 245 Wis. 2d 607, 629 N.W.2d 686, Fazio had to exhaust the available administrative remedies unless the result of the administrative process was "preordained." The court acknowledged difficulty in understanding DETF's argument on the source of the Board's authority to order that interest. It also acknowledged 79 Op. Att'y Gen. 139, 142 (1990), which opines that the DETF Board's equity powers are limited to those defined in Wis. Stat. § 40.03(1)(a),[7] and states that the author "located no other statute, which, in [the

part-time service, a change in annual earnings period during the high years of earnings or the previous receipt and termination of an annuity.

This is the same as Wis. Stat. § 40.03(1)(a). *See* footnote 7.

[7] Wisconsin Stat. § 40.03(1)(a) provides:

**Powers and duties.** (1) Employee trust funds board. The board:

(a) Shall authorize and terminate the payment of all annuities and death benefits, except disability annuities, in accordance with this chapter and may adjust the computation of the amount, as provided by this chapter, as necessary to prevent any inequity which might otherwise exist if a participant has a combination of

author's] opinion, expressly or impliedly gives the ETF Board additional equity powers." However, the court also recognized that attorney general opinions are not binding.[8] The court concluded that there was nothing to prevent the Board from deciding that it had the authority to award Fazio the interest she sought, that it was possible the Board would do so, and therefore the result was not preordained.

## DISCUSSION

¶ 6. Fazio argues that the circuit court erred in concluding that *Hensley* was controlling, because the requirement of exhaustion of administrative remedies imposed in that case was based on the language of a specific statute, the Prison Litigation Reform Act (PLRA), and similar language in WIS. STAT. ch. 40 does not exist. According to Fazio, the common law doctrine of exhaustion of administrative remedies applies here and does not require exhaustion, because it would be futile and would not serve the purposes of the exhaustion doctrine. This is so, Fazio argues, because the Board is without authority to provide her with the relief she seeks. DETF responds, as it argued before the circuit court, that the Board does have the authority to order DETF to pay Fazio the interest she seeks if it decides DETF's decision was in error.

full-time and part-time service, a change in annual earnings period during the high years of earnings or has previously received an annuity which was terminated.

[8] *See Hahner v. Board of Educ. Wis. Rapids*, 89 Wis. 2d 180, 192, 278 N.W.2d 474 (Ct. App. 1979) ("Attorney General's opinion is only entitled to such persuasive effect as the court deems the opinion warrants.").

■

¶ 7. A resolution of these issues requires the interpretation of statutes and regulations. These are all questions of law, which we review de novo, *see Hensley*, 2001 WI 105 at ¶ 6; however, we benefit in our review from the circuit court's thoughtful analysis.

¶ 8. We agree with Fazio that *Hensley* is not controlling. The PRLA, codified at WIS. STAT. § 801.02(7)(b), provides:

> (b) No prisoner may commence a civil action or special proceeding, including a petition for a common law writ of certiorari, with respect to the prison or jail conditions in the facility in which he or she is or has been incarcerated, imprisoned or detained until the person has exhausted all available administrative remedies that the department of corrections has promulgated by rule or, in the case of prisoners not in the custody of the department of corrections, that the sheriff, superintendent or other keeper of a jail or house of correction has reduced to writing and provided reasonable notice of to the prisoners.

In *Hensley*, the plaintiff, a prisoner, argued that there was a common law futility exception to this statutory requirement. That exception, he contended, applied to his constitutional challenges to certain Department of Correction (DOC) administrative regulations and permitted him to bring an action for a declaratory judgment without first going through the administrative inmate complaint review process. The supreme court concluded that the plain language of the statute contained no exception for futility. *Hensley*, 2001 WI 105 at ¶ 9. The supreme court disagreed with the analysis of this court, which had relied on cases that recognized a futility exception to the administrative exhaustion re-

quirement, because those cases had been decided before the enactment of the PLRA. *Id.* at ¶ 13.

¶ 9. Because the result in *Hensley* was based on the language of the PLRA, the threshold question is whether the statutes governing DETF contain similar language. We conclude they do not. WISCONSIN STAT. § 40.03(1)(j) states that the Board:

> (j) Shall accept timely appeals from determinations made by the department, other than appeals of determinations made by the department regarding disability annuities. The board shall review the relevant facts and may hold a hearing. Upon completion of its review and hearing, if any, the board shall make a determination which it shall certify to the participating employer or the appropriate state agency and to the appropriate employee, if any.

This paragraph plainly makes available to Fazio an administrative appeal to the Board from DETF's determination, but it does not require her to exhaust that appeal before bringing an action in court. WISCONSIN STAT. § 40.08(12) provides:

> (12) COURT REVIEW. Notwithstanding s. 227.52, any action, decision or determination of the board, the Wisconsin retirement board, the teachers retirement board, the group insurance board or the deferred compensation board in an administrative proceeding shall be reviewable only by an action for certiorari in the circuit court for Dane County that is commenced by any party to the administrative proceeding, including the department, within 30 days after the date on which notice of the action, decision or determination is mailed to that party, and any party to the certiorari proceedings may appeal the decision of that court.

This subsection applies to the manner of judicial review of a decision by the Board, but does not require that Fazio appeal the DETF determination to the Board.

■

¶ 10. DETF has brought to our attention no other sections in WIS. STAT. ch. 40, and we have located none, that are similar to WIS. STAT. § 801.02(7)(b) or that might reasonably be interpreted in the same way. We therefore conclude that ch. 40 does not foreclose the application of exceptions to the exhaustion of administrative remedies doctrine that Wisconsin courts have employed, and we now turn to that body of law.

■

¶ 11. Generally, where a statute sets forth a procedure for review of an administrative action and for judicial review of the administrative decision, the courts will consider that remedy exclusive and require that it be employed before other remedies. *Nodell Inv. Corp. v. City of Glendale*, 78 Wis. 2d 416, 422, 254 N.W.2d 310 (1977). This rule is

> a doctrine of judicial restraint which the legislature and the courts have evolved in drawing the boundary line between administrative and judicial spheres of activity. The premise of the exhaustion rule is that the administrative remedy (1) is available to the party on [the party's] initiative, (2) relatively rapidly, and (3) will protect the party's claim of right.

*Id.* at 424. Courts do not apply the rule when they determine that the reasons supporting the exhaustion rule are lacking, such as where the administrative agency would not have afforded the party adequate relief because the agency did not have the authority to provide the remedy sought. *Id.* at 426 (discussing *Kmiec v. Town of Spider Lake*, 60 Wis. 2d 640, 645, 211 N.W.2d

471 (1973), in which party seeking to challenge constitutional validity of zoning ordinance was allowed to bring action for declaratory judgment; doctrine of exhaustion of administrative remedies held inapplicable since board in that case had no authority to declare unconstitutional ordinance enacted by legislative body from which board derived its existence).[9]

---

[9] The doctrine of prior resort, or primary jurisdiction, is distinct from the doctrine of exhaustion of administrative remedies, although they are " 'complementary parts of a general principle which ordinarily serves to preclude judicial consideration of a question while there remains any possibility of further administrative action.' " *Nodell Inv. Corp. v. City of Glendale*, 78 Wis. 2d 416, 427 n.13, 254 N.W.2d 310 (1977) (citation omitted). The doctrine of prior resort applies when there has been a total absence of any formal proceedings before the agency. *Id.* The parties both appear to agree that the doctrine of exhaustion of administrative remedies, rather than that of prior resort, applies in this case, and we agree. Fazio made a request to DETF for the interest and DETF made a determination she was not entitled to it under the applicable statute. She thus took the first step in the administrative process to obtain the interest.

We recognize that Fazio has also filed an appeal of the DETF determination to the Board, and we have considered whether that fact in and of itself is a reason to require that she complete the appeal before the Board. However, it is evident that Fazio filed that appeal because if she did not do so within ninety days of the DETF decision, she would have lost the opportunity ever to do so; and if the final decision in this action is that she may not bring this action without first exhausting her administrative remedies, she would be left with no remedy. According to Fazio's counsel's comments to the circuit court, she was seeking a stay of the appeal to the Board pending a resolution of the exhaustion issue in this action. We do not know the current status of that request. For purposes of our decision, we do not consider it relevant that she appealed the DETF

¶ 12. Whether the doctrine of exhaustion of administrative remedies applies in this case depends on whether the Board has the authority, as DETF claims it does, to order DETF to pay Fazio interest on the lump-sum benefit she received.[10] If the Board does not have this authority, then the administrative remedies available to Fazio are not adequate and one of the principle premises for application of the doctrine is lacking. Because an administrative agency has only those powers that have been expressly granted by the legislature or are necessarily implied from the statute under which it operates, *Jackson v. Employe Trust Funds Bd.*, 230 Wis. 2d 677, 688, 602 N.W.2d 543 (Ct. App. 1999), we examine the statutes that govern DETF and the Board.

¶ 13. WISCONSIN STAT. § 40.73 specifies the manner for determining the amount of death benefits and does not make any provision for paying interest on that

determination to the Board; our analysis would be the same had she not done so. On the other hand, we do not address in this decision whether, if the proceedings on Fazio's appeal to the Board had concluded with a decision by the Board, WIS. STAT. § 40.08(12) would preclude this action.

[10] In *Benson v. Gates*, 188 Wis. 2d 389, 396, 525 N.W.2d 278 (Ct. App. 1994), we applied the futility exception in an action seeking benefits under WIS. STAT. ch. 40. We concluded that public school teachers seeking "creditable service" under WIS. STAT. § 42.245(1) (1965) did not have to first resort to and exhaust their administrative remedies before bringing their action for declaratory and other relief because DETF and the Board had already decided and codified in their regulations the legal issue the teachers wanted the court to decide. *See id.* at 400–01. We agree with DETF that this case is factually distinguishable because here there is no regulation that decides Fazio's claim for interest adversely to her.

amount when the death benefit is not paid on the date payable.[11] Fazio and DETF appear to agree that there is no other section in Wis. Stat. ch. 40 that expressly provides for payment of interest on the principal amount due. The next question is whether any section implicitly gives DETF the authority to pay that interest. Neither party points to one and we have discovered none. Next, we inquire whether the Board has the authority to order DETF to make such a payment. Fazio says no, and points out that the Board's authority to make any adjustments in the amounts prescribed by statute for equitable reasons is expressly limited by Wis. Stat. § 40.03(1)(a) to three situations: (1) a participant has a combination of full-time and part-time service, (2) a participant has a change in annual earnings period during the high years of earnings, or (3) a participant has previously received an annuity which was terminated. Fazio asserts, and DETF does not dispute, that these three situations do not include payment of the interest Fazio seeks.

---

[11] Fazio's lump-sum benefit was computed under Wis. Stat. § 40.73(1)(c), which provides in part:

 **Death benefits. (1)** The amount of the Wisconsin retirement system death benefit shall be:

 . . . .

 (c) Upon the death of a participating employee who, prior to death, met the applicable minimum age under s. 40.23(1)(a) (intro.), if the beneficiary to whom a death benefit is payable is a natural person, or a trust in which the natural person has a beneficial interest, the present value on the day following the date of death of the life annuity to the beneficiary which would have been payable if the participating employee had been eligible to receive a retirement annuity, computed under s. 40.23 or 40.26, beginning on the date of death and had elected to receive the annuity in the form of a joint and survivor annuity providing the same amount of annuity to the surviving beneficiary as the reduced amount payable during the participant's lifetime.

¶ 14. DETF argues, nonetheless, that the Board does have that authority under WIS. ADMIN. CODE § ETF 11.12(1)(d), which provides in relevant part:

> **(1)** FORM. Final decisions, and proposed decisions to be considered by the board, shall be in writing and include:
>
> . . . .
>
> (d) An order stating either that the department determination is affirmed or, where the department determination is not affirmed, remanding the matter to the department with instructions to take necessary action on the matter, consistent with the final decision.

We do not agree with DETF's reading of this regulation. This regulation permits the Board to order DETF to take the steps necessary to implement the Board's decision, but it does not address the authority of the Board to make any particular decision. It is not reasonable to read this regulation to give the Board the authority to order DETF to implement a final decision that the Board does not have the authority to make. We have already concluded that no statute gives either DETF or the Board the authority to pay Fazio interest on her lump-sum benefit. Our examination of the other sections of WIS. ADMIN. CODE ch. ETF 11 persuades us that the Board does not have the authority to order DETF to make any payments not authorized by statute.[12]

---

[12] The secretary of the department has the authority to promulgate rules implementing WIS. STAT. ch. 40, with the approval of the Board and certain other entities. WIS. STAT. § 40.03(1)(m) and (2)(i).

¶ 15. WISCONSIN ADMIN. CODE § ETF 11.03(2) addresses "Limitations on Board Remedies." Paragraph (a) is the same as WIS. STAT. § 40.03(1)(a). *See supra* footnotes 6–7. Paragraph (b) provides:

> (b) A right or benefit under ch. 40., Stats., may not be granted by the board as the result of an appeal unless under the facts proven and the provisions of ch. 40, Stats., and other applicable law, the appellant is eligible for the right or benefit, and meets all qualifications established by statute, administrative rule and any applicable contract authorized by ch. 40, Stats., as of the commencement of the appeal. This paragraph applies regardless of any allegation that an employe or agent of the department or member or agent of the board gave erroneous or mistaken advice or was negligent in the performance of any alleged duty to the aggrieved person.[13]

(Footnote added.) This paragraph indicates an intent to limit the Board's authority to consideration of statutes, rules, and contracts, and this is reinforced by the reference in other sections that describe the respective roles of the hearing examiners and the Board in inter-

---

[13] WISCONSIN ADMIN. CODE § ETF 11.03(2)(bm) imposes another limitation on the Board's authority:

> (bm) There is no remedy in an appeal before a board based on a theory of undue influence. Regardless of proof offered by an appellant, the board may not change or void any choice, designation, application or other action of a participant, annuitant, beneficiary, insured, or deferrer on the grounds that person was acting under the undue influence of another. Nothing in this paragraph shall be construed to prevent an aggrieved party from bringing an action against the beneficiary of the alleged undue influence in a court of competent jurisdiction and seeking any remedy available under the law.

preting and applying statutes, rules, and contracts.[14] In addition, the regulations specify mandatory standards for the Board's final decisions, which include: "(c) *Specific statutory authorization.* The final decision may not order or authorize any action solely to further a purpose of the public employe trust fund unless the action is specifically authorized by a provision of ch. 40, Stats., other than s. 40.01(2), Stats." WIS. ADMIN.

---

[14] WISCONSIN ADMIN. CODE § ETF 11.08(2)(e) provides

> **(2)** The hearing examiner shall prepare and issue a dismissal, in the form and manner required by this chapter for a final decision, under the following circumstances:
>
> . . . .
>
> (e) There is no material issue of fact or law and under the undisputed material facts and law, the appellant is ineligible for the claimed right or benefit or fails to meet all the qualifications for the claimed right or benefit established by statute, administrative rule and applicable contract.

WISCONSIN ADMIN. CODE § ETF 11.08(5) provides:

> **(5)** The hearing examiner shall not exercise final decision-making authority under sub. (2)(c), (d) or (e), (3) or (4), if the decision necessarily involves the interpretation of a statute, rule or clause of a contract authorized under ch. 40, Stats., which the examiner finds to be ambiguous. The hearing examiner shall prepare a proposed decision and allow the board to make the necessary interpretation.

WISCONSIN ADMIN. CODE § ETF 11.09(1) provides:

> **(1)** CONTENTS. The proposed decision shall be in the same form and comply with the same standards as is required for a final decision. If the hearing examiner concludes that the decision may depend upon the interpretation of an ambiguous statute, the proposed decision shall include the hearing examiner's basis for concluding that the statute is ambiguous as a matter of law and a recommended interpretation giving the same weight to the interpretations of the department, attorney general and administrative rules as is required for a final decision.

CODE § ETF 11.12(2)(c). The Board is specifically authorized to interpret ambiguous statutes, § ETF 11.12(3), and is also specifically directed to give "great weight" to the written opinion of the attorney general and the interpretation of the department, and "controlling weight" to the department's administrative rule interpreting a statute, § ETF 11.12(4). Reading these regulations together, the only reasonable construction is that the Board has no authority to order payments that are not authorized by WIS. STAT. ch. 40 or by rules or contracts authorized by that chapter.

¶ 16. We conclude that, if Fazio is entitled to interest on the lump-sum benefit, entitlement is not conferred by WIS. STAT. ch. 40, but either by the common law doctrine of unjust enrichment or by WIS. CONST. art. I, § 13. We also conclude that the Board does not have the authority under ch. 40 or the implementing regulations to decide whether Fazio is entitled to the relief she seeks under either the common law doctrine or the Wisconsin Constitution.

¶ 17. Recognizing that Fazio claims entitlement to relief not under WIS. STAT. ch. 40 but under the Wisconsin Constitution, DETF points to *Hensley* and *Hogan v. Musolf*, 163 Wis. 2d 1, 12, 471 N.W.2d 216 (1991), as examples of other cases in which a court has required exhaustion even where the issue the plaintiff sought to raise was a constitutional issue. According to DETF, these cases show that Fazio's remedy here is not inadequate simply because she is claiming she is entitled to interest on the lump sum on constitutional grounds. As we have already explained, the court's conclusion in *Hensley* that the plaintiff had to raise all issues in the administrative proceedings—including the constitutional invalidity of DOC rules regardless of whether DOC had the authority to declare them

unconstitutional—was based on language in the PLRA that does not appear in ch. 40. *Hensley*, 2001 WI 105 at ¶ 9.

¶ 18. *Hogan* also does not support the DETF's position, because the court's rejection there of the taxpayers' futility argument was based on the statutory authority of the Department of Revenue (DOR) and the Tax Appeals Commission. The taxpayers contended that the administrative remedies available to them were futile because neither DOR nor the commission had the authority to declare the tax statutes unconstitutional or to award damages against the defendant in their individual capacities.[15] The *Hogan* court con-

---

[15] The first issue the court in *Hogan* addressed was whether federal law permitted Wisconsin to require that plaintiffs exhaust state remedies in tax matters before bringing an action under 42 U.S.C. § 1983 alleging that certain state tax statutes violated the supremacy clause of the United States Constitution. *Hogan v. Musolf*, 163 Wis. 2d 1, 12, 471 N.W.2d 216 (1991). The court decided that, although the general rule under federal law was that a state may not bar a plaintiff from bringing an action under § 1983 because of failure to exhaust administrative remedies, there was an exception for challenges to the administration of tax statutes. *Id.* Under this exception, the state could require plaintiffs to exhaust administrative remedies before bringing § 1983 actions if their administrative remedies were plain, adequate, and complete. *Id.* at 12–19. The court decided that the administrative remedies available to the taxpayer met that requirement. *Id.* at 20. The court concluded Wisconsin law did require plaintiffs challenging administration of taxing statutes to exhaust available administrative remedies before commencing a § 1983 action. *Id.* at 26–27. The court based this conclusion on the statutory language in Wis. Stat. §§ 73.01(4) and 73.015. *Id.* at 24–25. Section 73.01(4) provided that "[s]ubject to the provisions for judicial review contained s. 73.015, the commission shall be the final authority for the

819

cluded that DOR and the commission had the authority to decide whether the continued application of the Wisconsin taxing scheme violated federal law or the constitution, because the United States Supreme Court recently had held that the taxing scheme of another state that was substantially similar to Wisconsin's did violate federal law or the constitution. *See Hogan*, 163 Wis. 2d at 21. The court also observed that DOR and the commission had the authority to grant a refund to the plaintiffs on the basis of the federal statute without deciding the constitutional issue. *Id.* at 22. In contrast, in this case the Board does not have the statutory authority to decide whether Fazio's property has been taken without just compensation and to award her just compensation if it has been.

¶ 19. DETF asserts that the purposes of the general rule of exhaustion of administrative remedies are served in this case if the Board has the opportunity to review Fazio's appeal. According to DETF, in the event of an adverse decision by the Board, the court on certiorari "will have the benefit of a fuller record once the agency has had an opportunity to address Fazio's claims and explain this reasoning." However, DETF does not explain more specifically how the record after an adverse Board decision will aid a reviewing court in a resolution of Fazio's claims. Since the Board does not have the authority to decide Fazio's claims for unjust enrichment or an unconstitutional taking, we fail to see

hearing and determination of all questions of law and fact arising under sub. (5) and . . . subch. XIV of ch.71 . . . ." *Hogan*, 163 Wis. 2d at 24. Section 73.015(1) provided in part that "no person may contest, in any action or proceeding, any matter reviewable by the commission unless such person has first availed himself or herself of a hearing before the commission . . . ." *Hogan*, 163 Wis. 2d at 25.

how its explanation of that lack of authority will aid a reviewing court in resolving those claims.

¶ 20. We conclude that an appeal to the Board is an inadequate remedy for Fazio because the Board does not have the statutory authority to award her interest based either on a claim of unjust enrichment or a claim of taking under WIS. CONST. art. I, § 13. We therefore conclude that the doctrine of exhaustion of administrative remedies does not require that she appeal DETF's determination to the Board before filing this action.

¶ 21. DETF also appears to suggest that sovereign immunity is an alternative basis for affirming the trial court's dismissal.[16] However, the taking clause, WIS. CONST. art. I, § 13, is a self-executing waiver of sovereign immunity. *Wisconsin Retired Teachers Ass'n v. Employe Trust Funds Bd.*, 207 Wis. 2d 1, 28, 558 N.W.2d 83 (1997). For this reason, when the legislature has not provided specific procedures for the recovery of just compensation following a taking, an aggrieved person may proceed directly under art. I, § 13. *Id.* at 29.[17] Therefore, the doctrine of sovereign immunity

---

[16] WISCONSIN CONST. art. IV, § 27 provides:

> The legislature shall direct by law in what manner and in what courts suits may be brought against the state.

[17] For this reason, too, the failure to file a notice of injury under WIS. STAT. § 893.82 does not apply to a taking claim. *Wisconsin Retired Teachers Ass'n v. Employe Trust Funds Bd.*, 207 Wis. 2d 1, 29–30, 558 N.W.2d 83 (1997).

does not provide an alternative basis on which to affirm the circuit court's dismissal as to the taking claim.[18]

██

¶ 22. In summary, we reverse the circuit court's order dismissing the complaint because we conclude that Fazio was not required to exhaust her administrative remedies before filing this action. As to the taking claim, we hold that sovereign immunity does not provide an alternative basis for affirming dismissal of that claim. We do not decide whether there are other grounds for dismissal of either the taking claim or the unjust enrichment claim.

*By the Court.*—Order reversed and cause remanded.

[18] DETF asks that we affirm the court's dismissal on the alternative grounds that the complaint fails to state a claim for a taking, and that the unjust enrichment claim against Stanchfield is barred because of failure to comply with the notice of claim requirement in WIS. STAT. § 893.82(3). DETF raised these issues in its motions to dismiss. However, a full briefing and a hearing on these issues did not occur before the court dismissed the action on the grounds that formed the basis for this appeal. We therefore do not address these issues. Nothing in our decision precludes the trial court from considering these and other grounds to dismiss that we do not address in this decision.